G. W. HULL, Appellant, v. CHICAGO, B. & Q. R. Co., Appellee.

RAILROADS: Injuries to Animals—Duty to Keep Gates Closed—
Negligence. A railroad company is held only to the exercise of
reasonable diligence to keep closed the gates in its right of way
fences.

PRINCIPLE APPLIED: The tenant of a farm adjoining a
railway made daily use of a gate in the railway right of way
fence, and, in spite of the protests of the railway company, persistently and intentionally left the gate open. The section men
always closed the gate when they discovered it open. They quit
work at 4:30 P. M. on the day in question and then closed the gate.
The tenant left the gate open at 6:00 P. M. During the night,
a cow escaped from an adjoining farm, went upon the land occupied by the tenant and thence through the open gate and upon the
track and was killed. *Held,* the company was not liable, no negligence appearing.

*Appeal from Monroe District Court.*—HON. D. M. ANDERSON,
Judge.

TUESDAY, OCTOBER 19, 1915.

ACTION to recover the value of a cow killed upon defendant's right of way, due, as is alleged, to defendant's failure
to keep a gate in a fence upon said right of way closed. Defendant denied all negligence and, upon the issues joined, the
case was tried to the court without a jury, resulting in a
judgment dismissing the petition, and plaintiff appeals.—*Affirmed.*

*John R. Price,* for appellant.

*J. C. Mabry* and *T. B. Perry, Jr.,* for appellee.

DEEMER, C. J.—Defendant's main line of track in Monroe county runs north of plaintiff's property. Adjoining

plaintiff's property on the east and abutting the right of way
was a farm belonging to one Payne, which

RAILROADS : in-
juries to ani-
mals : duty to
keep gates
closed : negli-
gence.

was occupied by his tenant, Utley. The rail-
way passed through the Payne farm; and
upon either side of the right of way as it
passed through the farm, and in the right of way fences, were
gates erected for the benefit of Payne or his tenants. Plain-
tiff was the owner of a jersey cow which, on December 6, 1911,
escaped from his pasture and went upon the highway and
thence upon the Payne land, and one of the gates in the right
of way fence being open, it got upon the railway track and
was there killed. The tenant, Utley, frequently left this gate
open and often told the section men that he would not keep
it closed. The section men often found it open and as many
times closed it. Plaintiff frequently saw the gate in question
open and testified that he observed it open about 6 o'clock
in the evening of the day the animal was killed. The section
men testified that they saw it open about 4:30 P. M. of that
day as they were quitting work, and that they closed it, as
they always did when they found it open. When these section
men went back over the track, at about 7:15 the next morning,
they noticed that the gate was partly open, and also discovered
that plaintiff's cow had been killed. While the gate had no
fastenings,—that is, had no lock or hasps,—it was a sliding
gate and, when in place, answered the requirements of the
law. Plaintiff relies chiefly upon the fact that the tenant,
Utley, frequently left this gate open and refused to close it,
remarking to the section men that it was too much bother.
He kept his cow in a pasture on one side of the right of way
and took her to the other side almost daily for water and to
milk. The section men threatened to nail up the gate, but
Utley declared he would tear it down as fast as they nailed
it. A proper fence and gate having been supplied by the
company, or at least no negligence being charged in this
respect, it is not liable for the killing of the cow unless, as the
petition in the case charges, it permitted the gate to remain
open an unreasonable length of time.

The trial court undoubtedly found that the gate was closed by the defendant's section men at 4:30 P. M. on the day of the accident, and may have found, under the testimony, that it was open about 6:00 P. M. of the same day. The section men closed the gate as they were leaving their work and going home, and there is no liability on the part of the company unless it be found that it did not meet its full duty when it closed the gate at 4:30 P. M. on the day of the accident. It was not required by law to keep a continuous oversight of this gate or to keep a man on guard to see that Utley kept it closed. It might, perhaps, at the risk of a lawsuit, have nailed the gate up; but under this record, it was not required to do so. Under the record, there can be no doubt that Utley left this gate open as early as 6 o'clock in the evening of the day of the accident and that it had been closed by the section men at 4:30 P. M. of the same day. Was this an unreasonable length of time? We think not.

In *Harding v. The Chicago, Milwaukee & St. Paul Railway Company,* 100 Iowa 677, we said in effect that the agents and servants of a railway company, having closed a gate under circumstances quite similar to those appearing in this case, were not bound to remain on guard to see whether or not someone would return and open the gate again. The fault in this case was clearly that of the tenant Utley; and he, if anyone, and not the railway company, should be held liable for plaintiff's loss. The judgment seems to be supported by the testimony and it is—*Affirmed.*

LADD, GAYNOR and SALINGER, JJ., concur.